Date signed July 01, 2008



```
_____
              PAUL MANNES
         U. S. BANKRUPTCY JUDGE
```

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### at Greenbelt

| | |
|---|---|
| **In re:** | **Case No. 07-18958PM**<br>**Chapter 11** |
| **Greenbelt CT Imaging Center, LLC,** | |
| Debtor. | |
| **Siemens Medical Solutions USA, Inc. and Siemens Financial Services, Inc.,** | |
| Movants, | |
| v. | |
| **Greenbelt CT Imaging Center, LLC,** | |
| Respondent. | |

### MEMORANDUM OF DECISION

    This matter came before the court for hearing on April 10, 2008, on Motions[1] filed by Siemens Financial Services, Inc. ("Financial") and Siemens Medical Solutions USA, Inc.

---

    [1] Dkt. No. 183 is titled: "Motion of Creditor Siemens Financial Services, Inc. (i) to Compel Performance of Lease Obligations Under 11 U.S.C. § 365(d)(5); (ii) for Allowance of Administrative Claims Under 11 U.S.C. §§ 365(d)(5) and 503(a); (iii) for Adequate Protection Under 11 U.S.C. § 363(e); and (iv) to Compel Debtor to Assume or Reject Leases."

    Dkt. No. 192 is titled: "Motion of Creditor Siemens Medical Solutions USA, Inc. (i) to Compel Performance of Certain Executory Contract Obligations Under 11 U.S.C. § 365(d)(5); (ii) for Allowance of Administrative Claims Under 11 U.S.C. §§ 365 and 503(a); (iii) for Adequate Protection Under 11 U.S.C. § 363(e); and (iv) to Compel Debtor to Assume or Reject Certain Executory Contracts."

("Medical") (collectively, "Siemens") (Dkt. Nos. 183 and 192), and the opposition of Greenbelt CT Imaging Center, LLC ("the Debtor"). The court is assisted in the resolution of these matters by the Stipulations of Fact entered into evidence and filed on the record (Dkt. No. 276), as well as the post-hearing memoranda filed by the parties (Dkt. Nos. 278, 288 and 290).

The Debtor and Siemens are parties to service and equipment agreements[2] with respect to three pieces of medical scanning equipment. This equipment is described as a Somatom Sensation CT scanner ("Somatom"), an Ecat Accel PET scanner ("PET") and a Biograph 16 PET/CT scanner ("Biograph"). The Somatom and PET scanners are located at the Debtor's Greenbelt, Maryland location, while the Biograph – a scanner described by Siemens' expert to be the superior equipment – is at the Debtor's Rockville, Maryland location. The dispute between the parties involves six agreements – three service agreements and three equipment agreements made between the Debtor and Medical.[3]

The court notes that the relief originally sought by Siemens in the Motions has narrowed in light of adversary proceedings commenced by the Debtor against Medical (AP No. 08-00202) and Financial (AP No. 08-00203). In these actions set for trial in December 2008, the Debtor alleged that the Lease Agreements relating to the three pieces of equipment at issue herein amounted to financing agreements rather than true leases. In answering the complaints, Siemens admitted that the agreements were in the form of financing, leaving for trial determinations as to the extent and value of Siemens' liens. Accordingly, Siemens' request in the Motions to compel the Debtor to assume or reject the equipment "leases" is now moot.

As narrowed, the issues before the court for decision are whether Medical and Financial are entitled to allowance of administrative claims, adequate protection, compelled assumption or rejection of the service agreements under 11 U.S.C. § 365(d)(2) and compelled performance of the service agreements.

---

[2] As discussed further herein, the equipment agreements are the subject of adversary proceedings commenced by the Debtor.

[3] The agreements relating to the Somatom and PET scanners were assigned to Financial.

**Adequate Protection**

Siemens asserts entitlement to adequate protection of their interests in the medical equipment under 11 U.S.C. § 363(e). Adequate protection is addressed, although not defined, in 11 U.S.C. § 361 that provides:

> When adequate protection is required under section 362, 363, or 364 of this title of an interest of an entity in property, such adequate protection may be provided by –
>
> > (1) requiring the trustee to make a cash payment or periodic cash payments to such entity, to the extent that the stay under section 362 of this title, use, sale, or lease under section 363 of this title, or any grant of a lien under section 364 of this title results in a decrease in the value of such entity's interest in such property;
> >
> > (2) providing to such entity an additional or replacement lien to the extent that such stay, use, sale, lease, or grant results in a decrease in the value of such entity's interest in such property; or
> >
> > (3) granting such other relief, other than entitling such entity to compensation allowable under section 503(b)(1) of this title as an administrative expense, as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property.

Adequate protection as framed by Siemens is in the form of an administrative expense under 11 U.S.C. § 503(a). In determining the extent of adequate protection Siemens is entitled to, or the amount of the administrative claim, this court must first ascertain the value of the medical equipment, and then calculate the rate of depreciation of the equipment during the pendency of this case. The principle involved is to have the payments made by the Debtor keep pace with the depreciation of the lien collateral. *In re Hanna*, 912 F.2d 945, 950-951 (CA8 1990). With regard to valuation, the parties offered testimony of appraisers that the court found modestly qualified.

Siemens' appraiser, Dan Capozzelli ("Capozzelli"), an asset manager for Siemens, opined that the PET scanner, delivered in November 2003, was valued at $150,000.00 in August 2007, and $53,000.00 in March 2008. The Somatom, delivered in August 2004, was valued at $419,000.00 in September 2007, and $309,000.00 in March 2008. The Biograph, delivered in July 2005, was valued at $794,000.00 in September 2007, and $604,000.00 in March 2008. Capozzelli explained that the values were derived from consultation with brokers based solely on Siemens' records and an assumption that the equipment was in good condition. Capozzelli takes

the brokers' values, throwing out values that he perceives to be too high or too low, and assigns a value. The process of valuation was referred to by Capozzelli as "desktop" evaluations.

Siemens urges that, based on their expert's values from at or around the petition date (September 16, 2007) through March 2008, the depreciation in value of the medical equipment less the amounts paid by the Debtor leaves a deficiency totaling $137,721.05 ($7,028.15 as to the PET; $35,098.46 as to the Somatom; and $95,594.44 as to the Biograph).

Carl Miceli ("Miceli"), a senior appraiser accredited by the American Society of Appraisers, the Equipment Appraisers Association of North America and the Association of Machinery and Equipment Appraisers, among others, was retained postpetition by the Debtor and made his valuations in February 2008. His appraisal report was admitted into evidence at the hearing and appears in the record at Dkt. No. 270-2. Miceli testified as to the methodology used in valuing the medical equipment, which was also set forth on page five of the report. Miceli consulted with dealers to ascertain value, as did Capozzelli; however, Miceli viewed the equipment, determining the property to be "for the most part, in good to fair condition." Miceli testified, and as reflected in the report, that he valued the PET scanner at $40,000.00, the Somatom at $275,000.00 and the Biograph at $800,000.00 as of February 13, 2008. It was Miceli's opinion that the type of equipment at issue has an economic life of approximately five to seven years and "in the first year of use it depreciates very rapidly and then slows down over the next few years and then levels off to parts machines." (Trans. p. 75). The experts appeared to be in agreement in this respect. (*See* Trans. p. 20).

Miceli suggested that "high tech medical equipment of this nature" depreciates at least 10% a year. (Trans. p. 70). As the Debtor did not have a starting point valuation, it added 5% to Miceli's values to arrive at petition date values. Using the depreciation in value of the medical equipment less the amounts paid by the Debtor (to which there was no dispute as to these amounts), the Debtor computed no deficiency and urged that Siemens was adequately protected.

As Miceli was engaged in February 2008, before the hearing, his opinion as to the value of the medical equipment at the time of the filing of the bankruptcy case will be given less weight. On the other hand, Capozzelli cannot be considered a disinterested witness. While Capozzelli's competence at valuation is limited to medical equipment, Miceli is a generalist. Yet, Miceli viewed the medical equipment and consulted the technicians handling same. The court finds the testimony of the experts close to being in equipoise. Capozzelli's knowledge of

the industry was impressive and Miceli's approach to the appraisal discipline professional in all respects.

Siemens has the burden of proof to establish its entitlement to an award under 11 U.S.C. § 503(b). It demonstrated that a substantial contribution was made to this estate. Thus, the burden of persuasion shifts to the Debtor. After consideration of the record, the court finds the value of the medical equipment as of the date of filing and as of the date of the hearing as follows:

| Equipment | Value/Petition Date | Value/April 10, 2008 | Depreciation |
|---|---|---|---|
| PET | $100,000.00 | $53,000.00 | $47,000.00 |
| Somatom | $350,000.00 | $300,000.00 | $50,000.00 |
| Biograph | $800,000.00 | $700,000.00 | $100,000.00 |

As there is no dispute as to the amounts paid by the Debtor postpetition in connection with the equipment, and based on the court's determination of value and depreciation, Siemens' interests are adequately protected.

**Administrative Claim**

With respect to the service agreements, the Debtor concedes that since the petition date through the date of the hearing, there was then due $44,758.07 as to the Biograph, $26,250.00 as to the Somatom and $26,250.00 as to the PET. In defense of non-payment, the Debtor asserts that because the Biograph was inoperative for 47 days, or 32% of the time of the service agreement, that it is entitled to a setoff of $47,000.00. The court is handicapped somewhat in that the service agreement related to the Biograph is less than legible. The agreement, however, appears to reflect a "Performance Guarantee" of 97% based on an average of 12 months. (Dkt. No. 192-3, p. 21). The "System Performance Guarantee" is set forth on p. 26 of Dkt. No. 192-3 and provides the remedy for a performance level less than guaranteed. The contract remedy is not non-payment but an extension of the warranty. The agreement further provides that there are no warranties express or implied. Siemens has no responsibility for damages relating to lost revenues or consequential damages.

Nonetheless, this matter comes before the court for a determination of administrative expenses, requiring a showing of demonstrable benefit to the estate. As stated above, the burden is on the claimant. *In re Best Products, Inc*., 173 B.R. 862 (BC S.D.N.Y. 1994). Based on this

record, the court is unwilling to allow the total administrative expenses sought by Siemens as the services for which compensation is sought appear inadequate.  If the Biograph was inoperative, whether it be for a full day or a half day, the Debtor could not operate from the Rockville facility.  Patients are not like vehicles waiting in line at a car wash.  They require prepping and cannot be made ready at the whim of the Biograph.  The court will allow Siemens $100,000.00 as an administrative expense claim from the petition date through April 10, 2008, and direct the Debtor to pay this sum within 60 days from the entry of an order.

**Assumption/Rejection of Service Agreements**

The court is unwilling at this stage of the case to compel the Debtor to assume or reject the service agreements prior to the filing of a Chapter 11 Plan.  Under 11 U.S.C. § 1123(b)(2), a plan may provide for the assumption, rejection or assignment of any executory contract or unexpired lease not previously rejected.  It may well be in the Debtor's interest to reject one or more of the service contracts.  Its business plan may not call for the use of all three scanners.  Were the Debtor compelled at this point to assume the service agreements and later find the equipment redundant, or as suggested by both experts, outmoded, then the future liability under the agreements would be accorded the status of an administrative expense to the detriment of the Debtor and other creditors.  *In re Columbia Gas System, Inc.,* 50 F.3d 233, 238-239 (CA3 2003); *cf. In re Central Florida Metal Fabrication, Inc*., 190 B.R. 119, 122 (BC M.D. FL 1995).  The court finds no countervailing reason to compel action in that Siemens offered no proof to support the proposition that it needed certainty to perform its end of the bargain or mitigate its damages.

Counsel for Siemens shall submit an appropriate order on notice.

cc:     Debtor
        Debtor's Counsel
        Siemens Medical Solutions USA, Inc.
        Siemens Financial Services, Inc.
        Siemens Medical Solutions USA, Inc.'s Counsel
        Siemens Financial Services, Inc.'s Counsel
        Office of the United States Trustee
        Parties Requesting Notice

**End of Memorandum of Decision**